**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**

| | |
|---|---|
| **KENNETH L. MACK, SR.** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | **Case No.** _____ |
| **UNIFIED GOVERNMENT OF** ) | |
| **WYANDOTTE COUNTY AND** ) | |
| **KANSAS CITY, KANSAS** ) | **JURY TRIAL DEMANDED** |
| ) | |
| Serve at: ) | |
| Unified Government Clerk's Office ) | |
| 701 N. 7th St., Suite 323 ) | |
| Kansas City, KS 66101 ) | |
| ) | |
| **Defendants.** ) | |

<u>**COMPLAINT FOR DAMAGES**</u>

COMES NOW Plaintiff Kenneth L. Mack, Sr. (hereinafter "Plaintiff"), by and through his undersigned counsel and for his Complaint for Damages against Defendant Unified Government of Wyandotte County and Kansas City, Kansas. (hereinafter "Defendant") states and alleges as follows:

**PARTIES**

1.      Plaintiff is a citizen of the United States, and at all times pertinent to this Complaint for Damages, resided in Wyandotte County, Kansas and was an "employee" within the meaning of the Kansas Act Against Discrimination, KSA § 44-1002(b) ("KAAD"); the Age Discrimination in Employment Act 29 U.S.C. § 621 *et seq.* ("ADEA"); and Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e et seq. ("Title VII").

2.      Defendant is a political subdivision organized under the laws of the State of Kansas. At all times pertinent to this Complaint for Damages, Defendant UG was a "person" within the meaning of the KAAD, ADEA, and Title VII.

3.      This is an employment discrimination and retaliation lawsuit based upon and arising under the KAAD, the ADEA and Title VII.

## JURISDICTION AND VENUE

4.      All of the unlawful acts and practices set forth below were committed within Wyandotte County, Kansas.

5.      Jurisdiction and venue are proper in the District of Kansas pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1391.

## EXHAUSTION OF ADMINISTRATIVE PROCEDURES

6.      On or about April 23, 2021, Plaintiff timely filed a Charge of Discrimination against Defendant with the Kansas Human Rights Commission (KHRC), which was dually filed with the Equal Employment Opportunity Commission (EEOC), alleging discrimination due to race and age and retaliation. The Charge of Discrimination is attached hereto as Exhibit A and incorporated by reference as if fully set forth herein.

7.      On or about June 22, 2021, Plaintiff timely filed an Amended Charge of Discrimination against Defendant with the Kansas Human Rights Commission (KHRC), which was dually filed with the Equal Employment Opportunity Commission (EEOC), alleging discrimination due to race and age and retaliation. The Charge of Discrimination is attached hereto as Exhibit B and incorporated by reference as if fully set forth herein.

8.      On or about April 14, 2022, the U.S. Department of Justice (DOJ) issued to Plaintiff a Notice of Right to Sue on each charge and this lawsuit was filed within 90 days of the issuance

of the DOJ's Notice of Right to Sue. The Notices of Right to Sue for Plaintiff is attached hereto as Exhibit C and incorporated by reference as if fully set forth herein.

9.      On or about April 14, 2022, the EEOC issued to Plaintiff a Notice of Right to Sue on each charge and this lawsuit was filed within 90 days of the issuance of the DOJ's Notice of Right to Sue. The Notices of Right to Sue for Plaintiff is attached hereto as Exhibit D and incorporated by reference as if fully set forth herein

10.     The aforesaid Charge of Discrimination provided the KHRC, EEOC, and the DOJ sufficient opportunity to investigate the full scope of the controversy between the parties and, accordingly, the sweep of this judicial complaint may be and is as broad as the scope of a KHRC, EEOC or DOJ investigation, which could reasonably be expected to have grown out of the Charges of Discrimination

11.     Plaintiff has exhausted all of his administrative remedies and has satisfied all private, administrative, and judicial prerequisites to the institution of this action and it has been filed within the requisite statute of limitations.

## BACKGROUND

12.     Plaintiff is an African American male.

13.     Plaintiff was born in 1960 and is 61 years old.

14.     Plaintiff was employed Solid Waste Management Division of Defendant's Public Works Department, which is located at 701 N. 7th Street, Suite 712; Kansas City, Wyandotte County, Kansas, 66101, where he began his employment on or around January 21, 2005.

15.     Plaintiff began his employment with Defendant in or around March of 1990.

16.     Plaintiff's employment with Defendant continued until on or about March 5, 2021.

17.     Plaintiff began his employment with the City of Kansas City, Kansas in the Engineering Department.

18.     Plaintiff took a position in Defendant's Solid Waste Management Department around 2005, where he worked for approximately sixteen (16) years.

19.     Plaintiff managed the Department from approximately 2005 until his employment ended with Defendant.

20.     Virtually from the onset of his employment, Plaintiff experienced racial discrimination.

21.     During the duration of his employment, Plaintiff also witnessed a pattern in the Unified Government of African American employees frequently being passed over for jobs and promotions.

22.     In or around March 1990, Plaintiff was told he was hired as a "token" black employee.

23.     In or around 2003 or 2004, Plaintiff was called a "nigger" by Defendant's employee George Johnson at Defendant's Christmas party.

24.     Mr. Johnson was removed from the party but was never disciplined for making this discriminatory comment.

25.     In or around 2003 or 2004, Defendant's former Director of Public Works Gary Stubbs, who is Caucasian, had Deputy Director of Public Works Mike Tobin call Plaintiff into a meeting in Stubbs' behalf to inquire how Plaintiff could afford to live in the same neighborhood as Stubbs and how he could afford to drive a Jaguar.

26.     Racial discrimination was and continues to be systemic in the Unified Government.

27.     Plaintiff frequently witnessed one of his managers, Defendant's Executive Director of Public Works Jeff Fisher, treat African American employees more negatively than he treated Caucasian and Latino employees.

28.     Plaintiff noticed that Fisher regularly passed African American employees up for job promotion.

29.     On or around July 7, 2020, Fisher wrote a memorandum to County Administrator, Doug Bach, notifying Bach that Kirk Suther was retiring on July 22, 2020, which would create a vacancy in Plaintiff's department.

30.     Suther ran the graffiti mitigation program for Defendant and his position was below Plaintiff's position.

31.     However, Fisher wrote the memo as if Suther was the lead person within the Solid Waste Department, which was not true because Plaintiff was in charge of that department.

32.     In his memorandum to Bach, Fisher said Defendant should hire a Solid Waste/Recycling Manager who would oversee the department and steer it in "the right direction."

33.     Fisher's memorandum further stated that Defendant needed someone who could provide "expertise and direction."

34.     Fisher made it appear, through this memorandum, that there was a void in Waste Management because of Suther's retirement, which was not accurate because Plaintiff was managing the department.

35.     In truth, Suther only assisted with Solid Waste Department tasks at Plaintiff's direction.

36.     At the time of Fisher's memorandum to Bach, Plaintiff had sixteen (16) years of experience overseeing the contractual agreements of waste haulers, residential trash collection, the collection of solid waste, and recycling services.

37.     Plaintiff also oversaw the community recycling center, the yard waste site, and household hazardous materials programs.

38.     Plaintiff was more than qualified to fill the "new" position because it was the same job he had been performing successfully for sixteen (16) years.

39.     Before interviews for the "new" position were scheduled, Fisher sent an email to one hundred and seventy-four (174) employees, excluding Plaintiff, encouraging them to apply for the position.

40.     In this email, Fisher stated that neither experience nor a degree was required to qualify for the position.

41.     The email said a "can-do attitude" was all that was necessary to qualify for the position.

42.     The email's content was a clear and direct contradiction of the content of Fisher's memorandum to Bach.

43.     Plaintiff found out about the position opening only after it was posted publicly and it was then that he realized the "new" position was for the job Plaintiff was already doing.

44.     Plaintiff applied for the job and interviewed for it.

45.     Plaintiff was embarrassed and upset by having to re-interview for a position he had been doing for sixteen (16) years.

46.     Originally, four (4) employees were scheduled to be interviewed, but three (3) of them dropped out of consideration.

47.     Plaintiff was told his interview and presentation were "solid."

48.     However, the hiring manager, Mr. Fisher, stated he did not want to fill the position based on one (1) interview.

49.     Plaintiff felt that Fisher was attempting to push him out of the job because of Plaintiff's race and, therefore, had no intention of hiring Plaintiff, despite his qualification and how well he did in his interview.

50.     On or around January 14, 2021, Plaintiff met with Fisher for what was supposed to be a performance review.

51.     However, Fisher only wanted to discuss the new position and informed Plaintiff that he was being removed from the list of potential candidates and asked Plaintiff how he would feel if Fisher hired someone with no prior solid waste experience.

52.     Fisher further told Plaintiff he wanted Plaintiff to train whomever Defendant hired.

53.     Fisher also stated that Plaintiff's interview and presentation had been solid, but that it was not about Plaintiff's qualifications, it was a matter of the new person being "the right fit."

54.     At this time, Fisher pointed out to Plaintiff that there were no persons of color, meaning African Americans, in any management position for any of the departments he oversaw, and said no person of color is the "right fit" for any of the departments he oversaw.

55.     At a meeting on or around February 23, Fisher announced he had hired someone for the new position; this person was not African American and had no solid waste management experience, but was being placed in a position above Plaintiff and being paid considerably more than Plaintiff.

56.    During a break in the meeting, Plaintiff expressed to another employee his displeasure about Fisher hiring someone into Plaintiff's position, and that employee informed Fisher about Plaintiff's remarks.

57.    Fisher telephoned Plaintiff later that afternoon and yelled at Plaintiff, using offensive language.

58.    At one point during the conversation, Fisher said to Plaintiff, "[i]f you fucking don't like the way I'm doing things, you can come to me about it. I fucking might not like what you say, but I have to listen. And if I fucking messed up, I have to live with that decision."

59.    Fisher repeatedly raised the topic of Plaintiff being passed over for the Solid Waste/Recycling Manager position, including on or around March 1, 2021, when Fisher asked why Plaintiff even applied for the job.

60.    On that same date, Fisher asked Plaintiff if he thought there was systemic racism in the Unified Government, to which Plaintiff responded that systemic racism existed throughout the Unified Government.

61.    Plaintiff believed it was abundantly clear that Fisher wanted Plaintiff to no longer be employed in the department after he put Plaintiff's job up for hire and replaced Plaintiff.

62.    In or around January 2021, Plaintiff reported his discrimination to a County Commissioner who reported it to Bach.

63.    However, Bach never spoke to Plaintiff about his discrimination complaint, and nothing was done to rectify the situation.

64.    Because Plaintiff was being pushed out of the department, and because Plaintiff's complaints were not addressed, on or around March 2, 2021, Plaintiff told his immediate supervisor, Mike Tobin, that Fisher was fostering a toxic environment and that Plaintiff could not

work for him anymore. Plaintiff informed Tobin he was going to give two (2) weeks' notice and would submit his resignation.

65.     On or around March 5, 2021, Tobin informed Plaintiff he had submitted Plaintiff's resignation and two (2) weeks' notice to Fisher, and Plaintiff's last day of employment with Defendant was supposed to be March 17, 2021.

66.     Tobin told Plaintiff Fisher was angry because Plaintiff had not submitted his resignation notice directly to Fisher. Tobin told Plaintiff Fisher wanted Plaintiff to leave immediately but would be paid through March 17, 2021.

67.     Because of this, Plaintiff's last day of work was March 5, 2021.

68.     Defendant discriminated against Plaintiff, allowed Defendant's employees to discriminate against and harass Plaintiff, and terminated him because of his race and age and Defendant retaliated against Plaintiff because of his complaints of discrimination.

## COUNT I
## RACE DISCRIMINATION IN VIOLATION OF TITLE VII

69.     Plaintiff hereby incorporates by reference as if fully stated herein the allegations contained in the foregoing paragraphs.

70.     Defendant UG is an employer under Title VII.

71.     Plaintiff is an African American male.

72.     Plaintiff is a qualified individual as defined by Title VII, due to his race.

73.     Defendants unlawfully and intentionally discriminated against Plaintiff based on his race and acted in bad faith by interfering with, recklessly disregarding, and denying his legal rights when they created such a hostile work environment Plaintiff was virtually forced to resign.

74.     Defendants' actions against Plaintiff were outrageous because Defendants had an evil motive and/or reckless indifference to the rights of others.

75.     As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

76.     As a further direct and proximate result of Defendants' actions and/or omissions, Plaintiff has suffered a loss of self-esteem, humiliation, emotional distress and mental anguish and pain, and related compensatory damages.

77.     By failing to take prompt and effective remedial action, Defendants in effect condoned, ratified and/or authorized the discrimination against Plaintiff.

WHEREFORE, Plaintiff prays for judgment against the Defendants, for all damages available under law including, but not limited to: back pay, lost benefits, and front pay, for all damages stated herein, for actual, compensatory, and special damages in an amount which is fair and reasonable, a finding that he is the prevailing party in this matter, all costs, expenses, expert witness fees and attorneys' fees incurred herein, for elimination of his detrimental job record, and for equitable relief, for pre and post judgment interest at the highest lawful rate, and for such other relief as the Court deems just and proper.

## COUNT II
## RETALIATION IN VIOLATION OF TITLE VII

78.     Plaintiff hereby incorporates by reference as if fully stated herein the allegations contained in the foregoing paragraphs.

79.     Plaintiff is an African American male.

80.     Plaintiff is a qualified individual under Title VII due to his race and Defendant's awareness of his race at all times relevant herein.

81.     Plaintiff engaged in protected activity under Title VII.

82.     Defendants took adverse employment action against Plaintiff in retaliation for this protected activity in violation of the Title VII.

83.     As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived of income, including wages and benefits as well as other monetary and non-monetary benefits.

84.     As further direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered a loss of self-esteem, humiliation, emotional distress and mental anguish and pain, and related compensatory damages.

85.     By failing to take prompt and effective remedial action, Defendant, in effect, condoned, ratified and/or authorized the discrimination against Plaintiff.

WHEREFORE, Plaintiff prays for judgment against the Defendant, for all damages available under law including, but not limited to: back pay, lost benefits, and front pay, for all damages stated herein, for actual, compensatory, and special damages in an amount which is fair and reasonable, a finding that he is the prevailing party in this matter, all costs, expenses, expert witness fees and attorneys' fees incurred herein, for elimination of his detrimental job record, and for equitable relief, for pre and post judgment interest at the highest lawful rate, and for such other relief as the Court deems just and proper.

**COUNT III**
**AGE DISCRIMINATION BASED IN VIOLATION OF THE ADEA**

86.     Plaintiff hereby incorporates by reference as if fully stated herein the allegations contained in the foregoing paragraphs

87.     Defendant is an employer under the ADEA.

88.     Plaintiff was sixty (60) years old when his employment with Defendant ended.

89.     Plaintiff is a qualified individual as defined by ADEA due to his age.

90.     Defendant unlawfully and intentionally discriminated against Plaintiff based on his age and acted in bad faith by interfering with, recklessly disregarding, and denying his legal rights they created such a hostile work environment Plaintiff was virtually forced to resign.

91.     Defendant's actions against Plaintiff were outrageous because Defendants had an evil motive and/or reckless indifference to the rights of others.

92.     As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived of income, including wages and benefits as well as other monetary and non-monetary benefits.

93.     As further direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered a loss of self-esteem, humiliation, emotional distress and mental anguish and pain, and related compensatory damages.

94.     By failing to take prompt and effective remedial action, Defendants, in effect, condoned, ratified and/or authorized the discrimination against Plaintiff.

WHEREFORE, Plaintiff prays for judgment against the Defendant, for all damages available under law including, but not limited to: back pay, lost benefits, and front pay, for all damages stated herein, for actual, compensatory, and special damages in an amount which is fair and reasonable, a finding that he is the prevailing party in this matter, all costs, expenses, expert witness fees and attorneys' fees incurred herein, for liquidated damages, for elimination of his detrimental job record, and for equitable relief, for pre and post judgment interest at the highest lawful rate, and for such other relief as the Court deems just and proper.

## COUNT IV
## RETALIATION IN VIOLATION OF THE ADEA

95.     Plaintiff hereby incorporates by reference as if fully stated herein the allegations contained in the foregoing paragraphs.

96.     Plaintiff was sixty (60) years old when his employment with Defendant ended.

97.     Plaintiff is a qualified individual as defined by the ADEA due to his age and Defendant's awareness of his age at all times relevant herein.

98.     Plaintiff is a member of a protected class because of his age.

99.     Plaintiff engaged in protected activity when he complained of discrimination.

100.    Defendant took adverse employment action against Plaintiff in relation for this protected activity, in violation of the ADEA.

101.    As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived of income, including wages and benefits as well as other monetary and non-monetary benefits.

102.    As further direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered a loss of self-esteem, humiliation, emotional distress and mental anguish and pain, and related compensatory damages.

103.    By failing to take prompt and effective remedial action, Defendant, in effect, condoned, ratified and/or authorized the discrimination against Plaintiff.

WHEREFORE, Plaintiff prays for judgment against the Defendant, for all damages available under law including, but not limited to: back pay, lost benefits, and front pay, for all damages stated herein, for actual, compensatory, and special damages in an amount which is fair and reasonable, a finding that he is the prevailing party in this matter, all costs, expenses, expert witness fees and attorneys' fees incurred herein, for liquidated damages, for elimination of his detrimental job record, and for equitable relief, for pre and post judgment interest at the highest lawful rate, and for such other relief as the Court deems just and proper.

**Demand for Jury Trial**

Plaintiff demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all matters set forth in this Complaint or arising therefrom, and, pursuant to D. Kan. Rule 40.2(a), requests such trial be held in Kansas City, Kansas.

Dated: June 23, 2022

By: */s/ Sarah C. Liesen*
Sarah C. Liesen KS #26988
208 W. Linwood Blvd.
Kansas City, Missouri 64111
Tel: (816) 301-4056
Fax: (816) 463-8449
sliesen@elmlawkc.com
**ATTORNEY FOR PLAINTIFF**